| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>- - - - - - - - - - - - - - - - - - x<br>UNITED STATES OF AMERICA<br>        - v. -<br>LAWRENCE BILLIMEK and<br>ALAN WILLIAMS,<br>        Defendants.<br>- - - - - - - - - - - - - - - - - - x | USDC OR Case No. 3:22-mj-00217<br><br>SEALED INDICTMENT<br><br>22 Cr. ___<br><br>22 CRIM 675 |

COUNT ONE
(Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury Charges:

**Overview of the Insider Trading Scheme**

1. From at least in or about 2016 through in or about the present, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, participated in a massive front-running scheme. As part of the scheme, BILLIMEK, a trader employed at a large investment manager (the "Employer") regularly misappropriated confidential information from the Employer about the Employer's large, upcoming securities trades that were likely to and did affect the stock price of the underlying securities. BILLIMEK then provided that confidential trade information to WILLIAMS, a retired investment professional, who engaged in day trading through a pair of retail trading accounts. Over the course of the scheme, WILLIAMS placed over approximately a thousand timely, profitable trades based on

the confidential trade information from BILLIMEK, thereby earning tens of millions of dollars in illicit profit.

2. In return for the confidential trade information, ALAN WILLIAMS, the defendant, sent at least approximately ten million dollars back to LAWRENCE BILLIMEK, the defendant, as payment for the confidential trade information. In describing the nature and source of these payments, WILLIAMS and BILLIMEK provided false and misleading information to various financial institutions, including that the payments were gifts to BILLIMEK. WILLIAMS and BILLIMEK remained in close and regular contact throughout the scheme to share the confidential trade information, including through the use of pre-paid unsubscribed "burner" phones.

### Relevant Individuals and Entities

3. LAWRENCE BILLIMEK, the defendant, is a trader at the Employer, where he has worked since in or about 2012. BILLIMEK has previously worked as a trader at other financial firms. Prior to engaging in this illegal front running scheme, BILLIMEK had substantial financial troubles. For example, in an email in or about August 2016, BILLIMEK wrote that he was "struggling" financially and "living paycheck to paycheck."

4. The Employer is an SEC registered investment advisor headquartered in New York, New York, which provides advisory services to a large investment management company that manages over $200 billion in assets.

5. At all relevant times, the Employer has maintained a code of ethics (the "Code of Ethics") that governs the personal trading activities of certain employees, including equity traders like LAWRENCE BILLIMEK, the defendant. The Code of Ethics regulates the use of confidential information that employees like BILLIMEK receive in the course of their employment, and prohibits, among other things, any effort to profit personally from their knowledge of recent or contemplated transactions in any account managed by the Employer. Among other things, the Code of Ethics also incorporated other prohibitions, including a strict prohibition on "front-running or tailgating (trading directly before or after the execution of a large client trade order), or any attempt to influence a client's trading to enhance the value of your personal holdings."

6. ALAN WILLIAMS, the defendant, is the former head equity trader at a large investment firm. WILLIAMS holds multiple retail trading accounts and actively day trades in at least two retail trading accounts.

**Means and Method of the Scheme**

7. From at least in or about 2016 through in or about the present, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, engaged in a front-running scheme to earn millions of dollars based on timely, profitable trading based on stolen inside information obtained from BILLIMEK in violation of BILLIMEK's duties of trust

and confidentiality to the Employer. In particular, the illegal scheme has had three basic elements:

a. First, BILLIMEK obtains confidential information about upcoming trades that the Employer intends to execute in certain securities (the "Confidential Trade Information"). Given the large sizes of these trades, they are likely to and often do cause a temporary move in the price of the underlying security. For example, a large buy order by the Employer would be likely to cause a temporary increase in the price of the underlying security due to the demand pressure generated by that buy order.

b. Second, BILLIMEK then shares the Confidential Trade Information with WILLIAMS. Over the course of the scheme, BILLIMEK typically has shared that information with WILLIAMS through phone calls or text messages, including through the use of at least two pre-paid unregistered "burner" phones used by BILLIMEK.

c. Third, WILLIAMS then uses the Confidential Trade Information to place timely, profitable securities trades. These trades are typically short-term intraday trades designed to take advantage of the temporary price movements caused by the underlying stock trading that is the subject of the Confidential Trade Information.

d. The following are certain examples of the trading scheme:

4

i. On or about June 8, 2020, WILLIAMS, based on Confidential Trade Information, realized profits of approximately $121,000 on intraday trading in shares of Lululemon Athletica Inc. ("LULU"). In particular, WILLIAMS engaged in a short sale of LULU shares just before the Employer engaged in the sale of a substantial number of LULU shares, and then WILLIAMS covered his short position at a lower price following the Employer's transactions.

ii. On or about July 10, 2020, WILLIAMS, based on Confidential Trade Information, realized profits of approximately $179,000 on intraday trading in shares of Ulta Beauty, Inc. ("ULTA"). In particular, WILLIAMS engaged in short sale of ULTA shares just before the Employer engaged in the sale of a substantial number of ULTA shares, and then WILLIAMS covered his short position at a lower price following the Employer's transactions.

iii. On or about February 24, 2022, WILLIAMS, based on Confidential Trade Information, realized profits of approximately $55,000 on intraday trading in shares of Vipshop Holdings Ltd ("VIPS"). In particular, between approximately 9:51 and 10:15 a.m. that morning, WILLIAMS bought over $1.8 million of VIPS shares, shortly before the Employer engaged in the purchase of a substantial number of VIPS shares. Then, within minutes, between

approximately 10:24 and 10:26 a.m., WILLIAMS sold all of the VIPS shares at a higher price following the Employer's transactions.

       iv. On or about August 15, 2022, WILLIAMS, based on Confidential Trade Information, realized profits of approximately $55,500 in intraday trading in shares of Match Group Inc. ("MTCH"). In particular, WILLIAMS sold short shares of MTCH just before the Employer engaged in the sale of a substantial number of MTCH shares, and then WILLIAMS covered his short position at a lower price following the Employer's transactions.

    8. Over the course of the scheme, ALAN WILLIAMS, the defendant, has engaged in over approximately a thousand intraday trades based on Confidential Trade Information provided by LAWRENCE BILLIMEK, the defendant. This trading has been spectacularly profitable, particularly when compared to other securities trading that WILLIAMS has conducted. In particular, since in or about September 2016, WILLIAMS' intraday trading has consistently been profitable over 90 percent of the time, leading to profits of tens of millions of dollars. By contrast, WILLIAMS' non-intraday securities trading during the relevant period has, overall, resulted in a net loss.

    9. As part of their scheme, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, agreed to share and have shared their illicit proceeds, including through the use of checks and wire transfers from WILLIAMS to BILLIMEK. In order to conceal the

nature and source of these payments, BILLIMEK and WILLIAMS have lied about the true nature of the payments, including by calling them gifts. At times, BILLIMEK has also authored affidavits or letters for WILLIAMS to sign and submit to his financial institutions to obfuscate the true source of these funds, and has claimed at various times, a family relationship or close friendship to explain the reason for the transfer of funds. In total, WILLIAMS has transferred millions of dollars back to BILLIMEK in return for the lucrative Confidential Trade Information.

### Statutory Allegations

10. From at least in or about 2016 through in or about the present, in the Southern District of New York and elsewhere, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and wire fraud, in violation of Title 18, United States Code, Section 1343.

11. It was a part and object of the conspiracy that LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of

the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, and a securities-based swap agreement, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Section 78j(b) and 78ff.

12. It was further a part and an object of the conspiracy that LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such

scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Overt Acts

13. In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about June 8, 2020, LAWRENCE BILLIMEK, the defendant, shared Confidential Trade Information with ALAN WILLIAMS, the defendant, after which WILLIAMS engaged in timely, profitable trading in the shares of LULU.

    b. On or about July 10, 2020, BILLIMEK shared Confidential Trade Information with WILLIAMS, after which WILLIAMS engaged in timely, profitable trading in the shares of ULTA.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 9 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

15. From at least in or about 2016 through in or about the present, in the Southern District of New York and elsewhere, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, willfully and knowingly, directly and indirectly, by the use of a means and

instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, and a securities-based swap agreement, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, BILLIMEK fraudulently misappropriated confidential information from the Employer about the Employer's confidential securities trade orders and trading activity, and shared that information with WILLIAMS to enable WILLIAMS to place timely, profitable securities trades based on that information.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5,
240.10b5-1, and 240.10b5-2; and Title 18, United States Code,
Section 2.)

**COUNT THREE**
(Wire Fraud)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 9 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

17. From at least in or about 2016 through in or about the present, in the Southern District of New York and elsewhere, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BILLIMEK misappropriated confidential information from the Employer about the Employer's confidential securities trade orders and trading activity, and shared that information with WILLIAMS to enable WILLIAMS to place timely, profitable securities trades based on that information, which scheme involved the use of interstate wires.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

18. As a result of committing the offenses charged in Counts One through Three of this Indictment, LAWRENCE BILLIMEK and ALAN WILLIAMS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

a. Any and all funds and assets up to and including $6,476,123 of U.S. currency and securities held in TD Ameritrade brokerage account number 780-078556 in the name of Alan Williams, and all proceeds traceable thereto;

b. Any and all funds and assets up to and including $7,806,920 of U.S. currency and securities held in TD Ameritrade brokerage account number 875-327835 in the name of the Alan G. Williams Trust, and all proceeds traceable thereto;

c. Any and all funds up to and including $17,932,268 of U.S. currency in JP Morgan Chase account number 3132113303 held in the name of Alan Williams, and all proceeds traceable thereto;

d. Any and all funds up to and including $461,000 of U.S. currency in JP Morgan Chase account number 1854194099 held in the name of Alan Williams, and all proceeds traceable thereto;

e. Any and all funds up to and including $3,695,000 of U.S. currency in JP Morgan Chase account number 444961200 held in the name of the Alan G. Williams Income Trust, and all proceeds traceable thereto;

f. The real property located at 1095 SW Schaeffer Road, West Linn, Oregon, and all proceeds traceable thereto;

g. Any and all funds up to and including $4,196,000 of U.S. currency in JP Morgan Chase account number 3606375211 held in the name of Lawrence P. Billimek, and all proceeds traceable thereto;

h. $150,000 of value in the Scenic Capital Advisors HIES Medical Center, LLC, and all proceeds traceable thereto;

i. The real property located at 25 South Club View Drive, Hailey, Idaho, and all proceeds traceable thereto;

j. The real property located at 1220 Dauphine Street, Unit F, New Orleans, Louisiana, and all proceeds traceable thereto;

k. The real property located at 56854 Besson Road, Bend, Oregon, and all proceeds traceable thereto;

l. The real property located at 5808 Beacon Drive, Austin, Texas, and all proceeds traceable thereto;

m. The real property located at 1903 Eva Street, Austin, Texas, and all proceeds traceable thereto;

    n. The real property located at 4460 Aku Road, Hanalei, Hawaii, and all proceeds traceable thereto;

    o. The real property located at 181 Hyndman View Drive, Hailey, Idaho, and all proceeds traceable thereto; and

    p. The real property located at 147 Magnolia Drive, San Antonio, Texas, and all proceeds traceable thereto.

Substitute Assets Provision

    19. If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

    (Title 18, United States Code, Sections 981(a)(1)(C);
        Title 21, United States Code, Section 853(p);
        Title 28, United States Code, Section 2461.)

_____  
FOREPERSON

_____  
DAMIAN WILLIAMS  
United States Attorney

```
Form No. USA-33s-274 (Ed. 9-25-58)
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

LAWRENCE BILLIMEK and
ALAN WILLIAMS,

Defendants.

SEALED INDICTMENT

22 Cr. _____

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1, 240.10b5-2; Title 18, United States Code, Sections 2, 371, and 1343.)

DAMIAN WILLIAMS
United States Attorney

A TRUE BILL

_____
Foreperson